25CA0251 Peo in Interest of Lozoya 05-08-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0251
Pueblo County District Court No. 24MH18
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Jose Luis Lozoya,

Respondent-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE BROWN
J. Jones and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 8, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Jose Luis Lozoya appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to medicate him without his consent.  We affirm.

## I.     Background

¶ 2     This case pertains to the psychiatric treatment of Lozoya's schizophrenia during his third hospital stay, beginning in December 2023, after he was found incompetent to proceed in a criminal case.

¶ 3     Lozoya was last discharged from the hospital in October 2022 after being restored to competency (the record suggests that the same criminal case was pending against him between his discharge in October 2022 and his readmission in December 2023).  During that previous hospital stay, several antipsychotic medications were ineffective in treating Lozoya.  However, he ultimately showed significant improvement on the antipsychotic medication clozapine, a medication for treatment-resistant patients with schizophrenia. He was restored to competency on a regimen of clozapine and the antipsychotic medication paliperidone.

¶ 4     However, when Lozoya was discharged from the hospital and sent back to jail in October 2022, clozapine was not prescribed for him at the jail due to an administrative error.  As a result, his

1

condition deteriorated, and he was once again found incompetent to proceed. Upon his readmission to the hospital in December 2023, Lozoya was experiencing auditory and visual hallucinations, disorganized thinking, and other significant negative symptoms, including limited speech production and poor energy to complete daily tasks. He agreed to take paliperidone but refused clozapine.

¶ 5    In January 2024, and again in July 2024, the People filed petitions to authorize the involuntary administration of three medications to treat Lozoya's schizophrenia: clozapine, paliperidone, and the antipsychotic medication olanzapine. Shortly after those petitions were filed, the parties entered into consent orders authorizing the involuntary administration of all three medications.

¶ 6    In January 2025, the People filed the petition at issue, again seeking authorization to medicate Lozoya involuntarily with clozapine, paliperidone, and olanzapine. At the hearing on the petition, Lozoya's clinical psychiatrist testified that Lozoya was taking clozapine and paliperidone on a scheduled basis, and olanzapine solely on an as-needed basis for acute agitation. The psychiatrist reported that Lozoya had again "improved significantly"

taking clozapine. The psychiatrist opined that, without the requested medications, Lozoya would likely suffer a significant and long-term deterioration of his mental condition and would pose a serious risk of harm to himself.

¶ 7       Lozoya testified that he did not have a mental illness and that he did not want to take any of the medications. The sole reason he gave for avoiding the medications was the pain he experienced from needle sticks — clozapine required a blood draw every two weeks for testing and monitoring, and paliperidone was administered through a monthly injection.

¶ 8       The district court found the psychiatrist's testimony to be credible and persuasive. The court granted the People's petition for the scheduled medications, clozapine and paliperidone. But it concluded that the People had not met their burden of proof to justify the involuntary treatment with the as-needed medication olanzapine, given its infrequent use.

                    II.    Applicable Law and Standard of Review

¶ 9       The parties agree that the district court's ruling was governed by the four-element test from *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985). Under the *Medina* test, a district court may authorize

the involuntary administration of medication if the People demonstrate by clear and convincing evidence that (1) the person is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the person's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the person's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the person in refusing treatment. *Id.*

¶ 10    Application of the *Medina* test involves mixed questions of fact and law. *People v. Marquardt*, 2016 CO 4, ¶ 8. We defer to the district court's factual findings if they have record support, while we review the court's legal conclusions de novo. *Id.* Resolving conflicts in testimony and determining the credibility of the witnesses are matters solely within the province of the district court. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23.

¶ 11    We must affirm the district court's ruling if the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the court's order. *People in Interest of*

*R.K.L.*, 2016 COA 84, ¶ 13.  The testimony of the physician seeking to administer treatment may be sufficient, without more, to satisfy the *Medina* test.  *Id.* at ¶ 30.

### III.    Analysis

¶ 12    Lozoya does not contest the district court's ruling that the People met their burden of proving the first, second, and fourth elements of the *Medina* test.  He challenges only the sufficiency of the evidence supporting the third *Medina* element — that a less intrusive treatment alternative was not available.

¶ 13    In finding that the third *Medina* element was satisfied, the court first noted the psychiatrist's testimony that electroconvulsive therapy (ECT) was the *only* alternative treatment.  Consistent with the psychiatrist's testimony, the court found that ECT would be *more* invasive than administering clozapine and paliperidone, and Lozoya does not suggest otherwise on appeal.

¶ 14    Instead, Lozoya contends that the People failed to prove that he could not be effectively treated "with different medications altogether."  But the district court found that Lozoya had previously been prescribed several other antipsychotic medications, all of which had proven ineffective in treating him, and that the

combination of clozapine and paliperidone had proven to be effective. The psychiatrist's testimony supports both findings. Thus, the record undermines Lozoya's claim that "different medications" were a less intrusive but equally effective alternative. *See People in Interest of Strodtman*, 293 P.3d 123, 133 (Colo. App. 2011) ("Under *Medina*, a 'less intrusive alternative' constitutes an available treatment that has less harmful side effects and is at least as effective at alleviating a patient's condition as the proposed treatment." (quoting *Medina*, 705 P.2d at 974)).

¶ 15    Lozoya also contends that the People failed to offer any explanation or evidence showing that he could not be treated "with alternative versions of [clozapine and paliperidone] . . . that would not require him to be stuck with a needle." With respect to the actual *administration* of clozapine, however, the record indicates that it was being given daily either orally or via nasogastric tube (not by injection). So Lozoya's complaint must be that treatment with clozapine requires a blood draw every two weeks for testing and monitoring. The psychiatrist testified that treatment with clozapine *required* blood draws for testing and monitoring. Thus,

the record reflects that there was no less intrusive way to treat Lozoya with clozapine.

¶ 16    With respect to paliperidone, we recognize that the psychiatrist did not testify about whether the amount of paliperidone Lozoya was taking could be administered without using needles. But according to the psychiatrist's affidavit and testimony, he was seeking to administer paliperidone to Lozoya *both* by mouth daily (up to twelve milligrams) *and* by monthly injection (up to 234 milligrams). The psychiatrist also testified generally that there was no "alternative method of treating [Lozoya] that would be both effective and less intrusive." Given the district court's credibility finding and adoption of the psychiatrist's opinions, we conclude that the evidence was sufficient for the court to conclude that there was no less intrusive alternative to administering paliperidone as requested.

## IV.   Disposition

¶ 17    The order is affirmed.

JUDGE J. JONES and JUDGE YUN concur.